UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x

EDWIN RODRIGUEZ,

                    Petitioner,              <u>ORDER</u>

          - against -
                                             Civil Action No.
SUSAN CONNELL,                               CV-05-0517 (DGT)
Superintendent, Oneida Correctional
Facility,

                    Respondent.
------------------------------------------------x

TRAGER, J.

     Petitioner, Edwin Rodriguez, was convicted of three counts

of manslaughter in the second degree, one count of driving while

intoxicated and six vehicle and traffic infractions in Suffolk

County Court.  Petitioner files this <u>pro</u> <u>se</u> petition for a writ

of habeas corpus under the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (2000), to vacate his

judgment of conviction.  For the following reasons, his petition

is denied.


                          **Background**

                             **(1)**

     Petitioner was tried by jury for second degree murder and

manslaughter, among other charges, resulting from a traffic

collision on New Year's Eve 1998.  On that night, petitioner, a

corrections officer working at Riker's Island, while driving
drunk, collided with another car driven by Angelette Coffey and
occupied by passengers Norma Vestal, Pascal Lee Trent and Matthew
Marcotrigiano on the Long Island Expressway in Suffolk County.

While petitioner was speeding and weaving through expressway
traffic, his Kia impacted the rear of Coffey's Chevrolet
Chevette, loosening its gas tank from the chassis.  Petitioner's
front bumper wedged underneath Coffey's rear bumper, causing the
two cars to become momentarily hitched to each other.  When the
cars separated, the Chevette's gas tank was dragged along the
road, causing enough friction for the gasoline to ignite, which
in turn set the car ablaze.  A driver who stopped at the scene
moments later was able to pull Coffey out of the car.  The heat,
however, hindered him from pulling out the passengers.  The force
of the impact seriously injured Coffey and, along with the fire
and smoke resulting from the crash, killed Vestal, Trent and
Marcotrigiano.

A number of people witnessed the collision and defendant's
erratic driving preceding it.  When the police arrived at the
scene of the collision, several bystanders were already tending
to petitioner and Coffey.  Witnesses described several near
collisions involving petitioner's car moments before the
collision.  Several witness saw the car weave in and out of

2

traffic, and one estimated petitioner's speed, at one point, to be 110 miles per hour.  Witnesses also noted petitioner's bloodshot eyes and a smell of alcohol emanating from him.

When the police arrived, officers collected evidence, videotaped the scene and questioned petitioner.  Petitioner initially denied that he was driving the Kia but, after he was placed under arrest, presented his corrections facility identification and said, "I'm on the job.  I'm a cop just like you are.  Can't you give me a break?"  Police officers and a volunteer fireman on duty observed that petitioner was impaired and smelled alcohol on his breath.

Petitioner was arrested and taken to Stony Brook University Medical Center where he received treatment for a head injury.  At the hospital, a police officer interviewed him for an Alcohol Influence Report.  Petitioner refused to submit to chemical testing or sign the refusal form despite warnings that a report would be made of his refusal.  Pursuant to a warrant, a blood test found alcohol over the legal limit in petitioner's system.

**(2)**

Petitioner was charged with second degree murder, second degree manslaughter, assault, vehicular assault, driving while intoxicated and various traffic infractions.  The State wanted to

3

introduce portrait photos taken of the deceased while they were alive. In a pretrial motion, petitioner objected. Trial Tr. 10-11. The trial court overruled the objection, ruling that, upon prior inspection by the court, the State would be entitled to introduce the portraits solely for the purpose of identification. Id. at 11:2-10.

The trial court also denied petitioner's motion to exclude videotape shot at the scene of the collision. Id. at 90:13-14. The videotape, which was shot and narrated by a police officer at the crime scene, ran eighteen minutes and depicted the positions of the two vehicles and the still-smoldering, charred bodies of Vestal, Trent and Marcotrigiano. Id. at 139-46, 148.

Before the video was shown to the jury and entered into evidence, petitioner objected to the introduction of the last five minutes in which the camera lingers on the burned bodies of the deceased. Defense counsel argued that the only purpose of admitting the depiction of the burned bodies would be to inflame the passion of the jury. Id. at 75. Furthermore, defense counsel contended that there would be no dispute as to the cause of death and that, even if there were, the State had a wealth of other evidence which it could use to establish cause of death. The State replied that the disputed portion of the video was

relevant to the cause of death, the positions of the bodies and petitioner's depraved indifference to human life.

The court overruled petitioner's objection. In support of its ruling, the court noted that the video was being offered to show depravity and the general location of the vehicles and to corroborate the medical examiner's testimony about the causes of death. After the video was shown, the petitioner moved for a mistrial claiming the videotape lacked probative value. Id. at 190:21-24. The court denied the motion. Id. at 191:22-23.

In addition to the lay testimony of the police officers at the scene of the crash and the witnesses on the road before and after the incident, the State presented expert testimony. One of the experts was the medical examiner who performed the autopsies on Vestal, Marcotrigiano and Trent. All three had burns in their respiratory systems from breathing smoke. According to the medical examiner, Marcotrigiano and Trent also had received head injuries that alone would have been fatal.

The State also presented the testimony of an accident reconstruction expert, who testified that petitioner's car was traveling at a speed between seventy and ninety-six miles per hour and Coffey's car was traveling at forty-five miles per hour when they collided. Petitioner's theory at trial was that the crash was at a low speed and that he merely did not see Coffey's

car when the car in front of him abruptly changed lanes to evade it. Petitioner's trial expert testified that the difference in speed between the two cars was at most thirty miles per hour.

After summations, the court instructed the jury on murder in the second degree by depraved indifference to human life and on manslaughter in the second degree. Regarding the second degree murder charge, the court instructed the jury, in relevant part, as follows:

> In determining whether a person's conduct
> evinced a depraved indifference to human
> life, a juror would have to decide whether
> the circumstances surrounding his or her
> reckless conduct, when objectively reviewed,
> made it so uncaring, so callous, so dangerous
> and so inhuman as to demonstrate an attitude
> of total and utter disregard for the life of
> the person or persons endangered.

Trial Tr. at 1826:14-22. The court then instructed the jury that, only if it found petitioner not guilty of second degree murder, could it consider petitioner's guilt of the lesser included offense of second degree manslaughter. Under New York law, a person commits second degree manslaughter when he recklessly causes the death of another person. According to the court, this occurs when

> that person engages in conduct which creates
> or contributes to a substantial and
> unjustifiable risk that another person's
> death will occur, and when he or she is aware
> of and consciously disregards that risk, and

6

> when that risk is of such a nature and degree
> that disregard of it constitutes a gross
> deviation from the standard of conduct that a
> reasonable person would observe in the
> situation.

Id. at 1832:8-19. After deliberating, the jury found petitioner
not guilty of murder and guilty of three counts of second degree
manslaughter. On April 4, 2000, petitioner was sentenced to an
indeterminate prison sentence of five to fifteen years.

Petitioner appealed, raising four arguments: (1) the trial
court improperly allowed the videotape and portraits into
evidence, thereby denying petitioner's right to a fair trial, (2)
the trial court erred in failing to suppress petitioner's refusal
to submit to a chemical test to determine blood alcohol content,
(3) the evidence at trial was insufficient to support
petitioner's convictions and (4) petitioner's sentence was harsh
and excessive.

The Appellate Division, Second Department, affirmed the
court holding, inter alia, that, though the portraits were
improperly admitted, the error was harmless and "not so
prejudicial as to require a new trial." People v. Rodriquez,
766 N.Y.S.2d 863, 1 A.D.3d 386 (2d Dep't 2003). The Appellate
Division also concluded that the evidence "was legally sufficient
to establish the defendant's guilt of manslaughter in the second
degree beyond a reasonable doubt." Id. Finally, the court held:

"The defendant's remaining contentions are without merit."  Id.[1]
The Court of Appeals denied petitioner leave to appeal on January
14, 2004.

By petition dated December 16, 2004, petitioner sought a
writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis
of the following contentions: (1) he was denied the right to a
fair trial due to evidentiary rulings regarding the videotape and
portraits, (2) the trial evidence was legally insufficient to
support his conviction,[2] (3) he was denied the right to a fair
appeal because the Appellate Division did not explicitly address
the videotape evidence and (4) he was denied due process because
of delay in his direct appeal.

In its response, the State argued that petitioner's
evidentiary claims did not raise a federal constitutional issue
and that his convictions were supported by ample evidence
including eyewitness and expert testimony.  Mem. of Law in Opp'n
to Pet. for Writ of Habeas Corpus ("Mem. in Opp'n") 3, 4-7.
Furthermore, the State indicated that the speedy appeal issue was

---

[1] The court did not explicitly address the admission of the
videotape into evidence.

[2] In Grounds One and Two, petitioner excerpted and
reasserted his arguments supporting Points One and Three,
respectively, before the Appellate Division.

8

never raised in state court and is, therefore, unexhausted.  Id. at 10.


## Discussion

### (1)

### Standard of Review

Under AEDPA, federal courts apply a deferential standard of review when reviewing a habeas corpus petition by a prisoner challenging a state court conviction that was adjudicated on the merits.  28 U.S.C. § 2254(d).  When a petitioner's claim has been adjudicated on the merits in state court, habeas relief will be available only if the petitioner can show that the state court decision: 1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or 2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  Id.


### (2)

### Evidentiary Rulings

Petitioner challenges the introduction of the portion of the videotape showing the victims' smoldering corpses and photographs of the victims taken before the collision.  Since "federal habeas

corpus relief does not lie for errors of state law," <u>Lewis v.</u>
<u>Jeffers</u>, 497 U.S. 764, 780 (1990), evidentiary errors are not
eligible for habeas review unless they deprive the petitioner of
due process under the Fourteenth Amendment, <u>e.g.</u>, <u>Estelle v.</u>
<u>McGuire</u>, 502 U.S. 62, 70 (1991).  Erroneously admitted evidence
does not deny a petitioner a fair trial unless, "viewed
objectively in light of the entire record before the jury, [it]
was sufficiently material to provide the basis for conviction or
to remove a reasonable doubt that would have existed on the
record without it." <u>Collins v. Scully</u>, 755 F.2d 16, 19 (2d Cir.
1985).  The evidence must have been "crucial, critical, highly
significant." <u>Id.</u> (internal quotation marks omitted) (quoting
<u>Nettles v. Wainwright</u>, 677 F.2d 410, 415 (5th Cir. 1982)).

In light of all the evidence before the jury, the Fourteenth
Amendment did not preclude the introduction of the video or the
portraits.  Petitioner was convicted after a three week trial, at
which overwhelming evidence was presented to support his
conviction.  For instance, the jury heard testimony from several
eyewitnesses, including Coffey, the surviving occupant of the
Chevette, establishing petitioner's reckless behavior.  It also
heard from police officers who recounted statements petitioner
made and described his comportment, appearance and smell after
the collision.  And it heard from experts, who established

petitioner's speed and blood alcohol content and the victims' causes of death. In light of the overwhelming evidence in favor of petitioner's guilty verdict, the video and portraits were not "sufficiently material to provide the basis" for petitioner's manslaughter convictions, and they did not remove a reasonable doubt that would have existed without them. See Collins, 755 F.2d at 19. In addition, the fact that petitioner was acquitted of depraved-indifference murder indicates that the jury was able to carefully evaluate the evidence and its passions were not inflamed by the videotape or portraits. Therefore, the introduction of the videotape and the portraits did not violate the Fourteenth Amendment.

### (3)

### Sufficiency of the Evidence

Petitioner claims that the evidence was insufficient to support his conviction, thereby violating his right to due process under the Fourteenth Amendment. Petitioner reasserts his argument on appeal that the evidence established that the collision was a mere accident and was insufficient to prove his guilt of second degree manslaughter. Petitioner relies on his expert's testimony and the State's failure to establish his intoxication as a cause of the collision.

When a petitioner challenges the sufficiency of the
evidence, the habeas court must determine whether "<u>any</u> rational
trier of fact could have found the essential elements of the
crime beyond a reasonable doubt." <u>Loving v. New York</u>, No. 04-CV-
1284(DGT), 2007 WL 1825401, at *4 (E.D.N.Y. June 21, 2007)
(emphasis in original) (internal citations omitted).  The
petitioner "bears a heavy burden because the government receives
the benefit of having all permissible inferences drawn in its
favor." <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002)
(internal citations and quotation marks omitted).

Under New York law, in order to convict petitioner of second
degree manslaughter, the prosecution was required to prove beyond
a reasonable doubt that petitioner recklessly caused the death of
the three victims.  N.Y. Penal Law § 125.15.  The State's proof
at trial consisted, in relevant part, of the testimony of two
experienced police officers describing petitioner's intoxicated
appearance and odor, the testimony of the accident reconstruction
expert, the testimony of numerous witnesses describing the
dangerous manner in which petitioner was driving in the moments
leading up to the collision and petitioner's blood alcohol
content of 0.13 four hours after his arrest.

In short, there was overwhelming evidence for a reasonable
fact-finder to conclude that (1) petitioner engaged in conduct

which created a substantial risk that another person's death would occur, (2) he was aware of and consciously disregarded that risk, and (3) disregard of that risk constituted a gross deviation from the standard of conduct that a reasonable person would have observed in the situation.  <u>See</u> Trial Tr. at 1832:8-19.  Therefore, petitioner's claim that the trial evidence was legally insufficient to support his conviction is rejected as completely meritless.

### (4)

### Remaining Arguments

A.  <u>Appellate Delay</u>

Petitioner claims that his due process rights were violated by a nearly four-year delay in his direct appeal.  Although "the right to a reasonably timely appeal is included among the protections afforded by the due process clause" when a state provides a right of appeal, <u>Cody v. Henderson</u>, 936 F.2d 715, 719 (2d Cir. 1991), petitioner never exhausted this claim by presenting it to the state court as required by § 2254.  In certain circumstances, a habeas court may excuse the exhaustion requirement when a petitioner was justified in not raising the issue.  <u>See</u> <u>Mathis v. Hood</u>, 851 F.2d 612, 614 (2d Cir. 1988). Indeed appellate delay, in addition to forming the substance of a

13

due process violation, may itself excuse exhaustion.  <u>Harris v.</u>
<u>Champion</u>, 15 F.3d 1538, 1557 (10th Cir. 1994).  The delay
complained of here, however, did not excuse petitioner from
exhausting his claim.

Petitioner's appellate timeline began when he was sentenced
on April 4, 2000.  Two years and nine months later on January 14,
2003, he perfected his appeal.  Respondent's brief was filed on
April 24, 2003, three months later.  Six months later, on
November 2, 2003, the Appellate Division affirmed the conviction.
Two and one-half months following the Appellate Division's
opinion, on January 14, 2004, the Court of Appeals denied
petitioner's leave to appeal.  Petitioner's entire appellate
process lasted three years and nine months, a major portion of
which was consumed by his delay in perfecting his appeal.[3]  The
length of the delay was unexceptional, and nowhere does
petitioner claim that the result of his appeal would have been
different without the delay.  <u>See</u> <u>Muwwakkil v. Hoke</u>, 968 F.2d
284, 286 (2d Cir. 1992) (finding that a thirteen year appellate
delay violated due process rights but that release was not an
appropriate remedy since petitioner did not show that there would
have been a different result without the delay);  <u>Elcock v.</u>

_____

[3] Nowhere does petitioner provide an explanation for this
delay.

14

<u>Henderson</u>, 947 F.2d 1004, 1007-08 (2d Cir. 1991) (over eight year delay); <u>Cody v. Henderson</u>, 936 F.2d 715, 719 (2d Cir. 1991) (over nine year delay).  Accordingly, no due process violation or excuse for exhaustion can lie, and this claim remains unexhausted.

B.   <u>Failure of the Appellate Division to Address the Videotape Issue</u>

Finally, petitioner claims that he was denied the right to a fair appeal when the Appellate Division "failed to address" the introduction of the videotape at trial.[4]  Petitioner's argument is unavailing since the Appellate Division clearly held that petitioner's remaining contentions, which necessarily encompassed the videotape issue, were without merit.  <u>Rodriquez</u>, 766 N.Y.S.2d at 863.

---

[4] Habeas petitioners who claim that a state appellate court failed to address an issue normally frame the argument as one of adjudication.  If the appellate court did not adjudicate the claim on the merits, its decision is reviewed de novo, rather than under the deferential standard set forth in § 2254(d).  <u>See, e.g.</u>, <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 310 (2d Cir. 2001).  However, the low adjudication threshold can be cleared by an appellate court's boilerplate holding that "defendant's remaining contentions are without merit."  <u>Brown v. Artuz</u>, 283 F.3d 492, 498 (2d Cir. 2002).  Therefore, in this case, the Appellate Division's affirmance of the trial court's ruling admitting the videotape is entitled to deference under § 2254(d).

## Conclusion

Petitioner has shown no basis for relief under § 2254, and, therefore, his petition is denied. The Clerk of the Court is directed to enter judgment accordingly and close the case.

In addition, because the petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253(c).


Dated:  Brooklyn, New York
        March 23, 2009

                              SO ORDERED:


                              _____/s_____
                              David G. Trager
                              United States District Judge